Charles H. Scott and Helen V. Scott v. Commissioner.
Scott v. Commissioner
Docket No. 52844.
United States Tax Court
T.C. Memo 1955-258; 1955 Tax Ct. Memo LEXIS 83; 14 T.C.M. (CCH) 1029; T.C.M. (RIA) 55258; September 16, 1955
*83 Jerome C. Bachrach, Esq., Farmers Bank Building, Pittsburgh, Pa., for the petitioners. Albert J. O'Connor, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $13,621.14 in income tax of the petitioners for 1950. The issue for decision is whether advances by Charles were deductible in 1950 under section 23(k)(1) as worthless debts, as contended by the petitioners, as a loss on a capital contribution, as determined and allowed by the Commissioner, or as a non-business bad debt in accordance with an alternative contention raised by the Commissioner in an amended answer. Findings of Fact The petitioners, husband and wife, filed their joint return for 1950 with the collector of internal revenue for the twenty-third district of Pennsylvania. Charles was successfully engaged for many years in selling and servicing new and used automobiles through a sole proprietorship known as Scott's Service Company located in Burgettstown, Pennsylvania. He was active in business, civic and church affairs in the community, and when the largest employer in the area closed its plant he joined other leaders in efforts *84 to attract other business to Burgettstown. Roy McK. Mann had been engaged in manufacturing athletic equipment but needed financial support to continue. Charles and Mann joined in the organization of Keystone Athletic Products, Inc., on June 21, 1948. Samuel Goldfarb, an attorney, did the legal work of incorporating. Mann transferred the assets and liabilities of his former business to the corporation. Goldfarb contributed his services. The stock was issued 51 shares to Charles, 19 to Goldfarb and 30 to Mann. Each share had a par value of $10. Mann became general manager on a salary. He was president, Charles was treasurer and Goldfarb was secretary. Charles paid no money for his shares. He was to assist in financing the business but was not to invest any of his own funds as capital. Goldfarb advanced $2,495 to the corporation during June and August 1948, but never advanced any additional funds. Charles made advances during June, July, August, September and December 1948 as a result of which the corporation owed him $11,480 at the end of 1948. He continued to advance money to the corporation through 1948 and until April 10, 1950, at which time the corporation owed him a total *85 of $35,168.50, after repayments amounting to $4,100. He had no intention in the beginning of advancing so much money. The advances were loans and Charles received from the corporation a chattel mortgage for $3,850 and numerous notes, all with interest at 6 per cent. No interest was ever paid on the loans. Charles attempted unsuccessfully to obtain loans for the corporation from a bank and from the R.F.C. He was active in the business of the corporation. A brother-in-law of Charles loaned $2,500 to the corporation during February and March 1949 and was repaid $500 on December 20, 1949. Charles sold his stock to Mann in June 1950 for $1,000. The corporation ceased business later in 1950 and its assets were sold at sheriff's sale in 1951 for merely enough to pay the costs of the sale. The indebtedness in the amount of $35,168.50 due to Charles from Keystone Athletic Products, Inc., became worthless during 1950. Charles did not claim any deduction on account of his advances to the corporation except on his 1950 return when, through error, he claimed a deduction of $28,757.32 representing worthless debts. The Commissioner, in determining the deficiency, disallowed that deduction *86 as a bad debt, explaining that it represented a capital contribution to the corporation and "the net capital loss for the year 1950 from your advances to Keystone Athletic Products, Inc., is limited to $1000 * * *" after offsetting reported gain of $1,000 on the sale of the stock. The advances made by Charles to Keystone Athletic Products, Inc., were not nonbusiness bad debts but were proximately related to a business regularly carried on by him. They were a part of a business of organizing, promoting, investing in, lending money to, and managing numerous commercial enterprises, or of doing one or more of those things in each case, before, during and after the years 1948, 1949 and 1950. All facts stipulated are incorporated herein by this reference. Opinion MURDOCK, Judge: The evidence clearly establishes that the advances were intended to be and were loans, as opposed to capital contributions, and that they became worthless during the taxable year. The Commissioner recognizes that the advances were worthless by the end of 1950. All three stockholders intended them to be loans and recognized them as such. They were recorded on the books as loans and were treated consistently *87 by the debtor as debts. They were evidenced by a mortgage and by notes. Interest was due but was never paid, only because the business was never successful enough to pay it. This is not a case calling for a disregard of form because capital was thin. There was no design to avoid taxes or to make real capital appear as indebtedness. The Commissioner, by amended answer, claims as an alternative to his determination that the advances, if debts which became worthless in 1950, were nonbusiness bad debts within the meaning of section 23(k)(4). The stipulated facts, supplemented by the testimony, show, however, that Charles made a business of organizing, conducting, investing in, lending to and, to some extent, promoting numerous enterprises of which Keystone Athletic Products, Inc., was one. Twelve are mentioned in the stipulation. Some were successful, others were not. He loaned money to six of them. He was sole owner, an officer, or a director of all of them and took an active part in their activities. The loans were business, as opposed to non-business, bad debts. Henry E. Sage, 15 T.c./ 299; ; . *88 Decision will be entered under Rule 50.